CONSOLIDATION COAL CO., Limited, v. THE ADMIRAL SCHLEY.

AMERICAN MAIL STEAMSHIP CO., Limited, v. THE CHARLES F. MAYER.

Nos. 1,234, 1,246.

(District Court, D. Massachusetts. April 1, 1902.)

1. COLLISION—NAVIGATION OF TUG AND TOW—CARE REQUIRED.

The navigation of a tug with tows at sea involves such danger of collision that the utmost care is required on the part of those in charge, and unusual maneuvers, which increase the danger, are not justified unless in case of necessity, and then extraordinary precaution should be taken.

2. SAME—MANEUVERING WITH TOWS—DANGEROUS SPEED IN FOG.

A steamer with two coal barges in tow on a line, the whole about 2,000 feet in length, arrived at the Boston light-ship in a fog so dense as to render an attempt to enter the harbor unsafe. While waiting for the fog to clear away, the steamer moved about with her tows, making a number of turns across the usual course of vessels passing in or out of the port. As she was making such a turn, her fog signal was heard by a steamer coming out, which, coming within sight of the last tow, was misled as to the direction and course of the towing steamer until the two vessels were so near together that a collision resulted, although both then did all that was possible to prevent it. The outcoming steamer, having a full speed of 14 knots, was going at a speed of about 8 knots, which she kept until the other vessel was sighted. *Held*, that both steamers were in fault,—the first for unnecessarily moving around with her tows in a place where such maneuvers were dangerous under the circumstances, and without giving adequate warning of their position by the sounding of danger signals from all the vessels or otherwise; and the second for going at too great a speed in a fog, and for neglecting, in violation of the rules, to stop or slacken speed when the first signal was heard.

In Admiralty. Suit and cross libel for collision.

Frederic Dodge, Edward S. Dodge, and J. Walter Lord, for the Charles F. Mayer.
Carver & Blodgett, for the Admiral Schley.

LOWELL, District Judge. These were cross libels for a collision which occurred between Thieves Ledge buoy and Boston light-ship, April 5, 1900, at about 1 o'clock in the afternoon. There was very little wind,—now and then a cat's-paw from the eastward,—and an easterly swell, which had been going down since the morning. The

testimony of the witnesses on both sides was, upon the whole, honest and true. It follows that the facts are not much in dispute. The Mayer, an iron steamer about 240 feet long, carrying about 1,500 tons of coal, was towing two loaded barges. The hawser between the Mayer and the first barge was about 150 fathoms long; that between the first and the second barge somewhat shorter. One barge was destined for Boston, the other for Portland. The tow reached Boston light-ship about 8 o'clock in the morning. Capt. McLeod, of the Mayer, deeming the fog too dense to enter Boston harbor, at once turned about, and made two loops to the eastward of Boston light-ship, waiting for the fog to clear off. This did not happen, but it became less dense for a few minutes, and he then proceeded to the westward of Boston light-ship. Finding the fog still too dense to go farther, he turned about, and followed a course first east by south, and then east by north, until he could hear the whistle on the light-ship. Just how far distant he was from it cannot be precisely ascertained,—somewhere between one and two miles. He then began to make still another turn,—the sixth in all,—first signaling his intention to the barges. While making the turn, he intended also to shorten the hawsers. The Mayer proceeded under a starboard wheel until it was heading about N. E. by N. ½ N. The hawser between it and the leading barge was somewhat slack. The direction of the leading barge had been changed to the northward perhaps a point. The direction of the rear barge was practically unchanged. The Mayer was 300 or 400 feet to the north of the line of its original course. A whistle was then heard,—evidently the fog signal of a steamer,—but the Mayer continued under a starboard helm until the Schley was seen to emerge from the fog, heading for the Mayer's port side, about 500 to 700 feet away. The Admiral Schley, a twin-screw fruit steamer, plying between Boston and Jamaica, left its wharf at 10 o'clock in the morning, and proceeded to President Roads, where it anchored on account of the fog. About noon the fog lighted up somewhat, and the Schley weighed anchor, went through the Narrows, passed Boston light, and continued on toward the light-ship on an E. by S. course, leaving Thieves Ledge buoy close on the port hand. The Schley's rate of speed was in dispute. There was evidence, especially from the engine room, which would put it at nearly full speed,—fourteen knots an hour. The captain estimated it at about six knots. Capt. Jones, of the forward barge, a competent, intelligent, and honest witness, called on behalf of the Mayer, put it at about eight knots. I think his estimate of the speed at the time he saw the steamer was the most trustworthy offered. The Admiral Schley, thus approaching at a speed of eight knots or thereabouts, first heard the faint sound of a whistle nearly ahead, a little on the starboard bow. The sound was not clearly distinguished, but it was supposed to be the signal of a tug and tow. The course of the Schley was thereupon changed from E. by S. to E. Soon after, the rear barge was seen, about a point ahead of the Schley's starboard beam, and 400 or 500 feet distant. It seemed to be proceeding in the same direction as the Schley. The courses of the Schley and the barge may have differed by a point. A little later the

Schley picked up the forward barge, some four points abaft the starboard bow. The forward barge appeared to those on the Schley to be following about the same course as the rear barge, and the Schley's helm was put half way to starboard in order to clear the tug and tow. In fact, as has been said, there may have been a difference of a point between the courses of the two barges, but a difference no greater than this would hardly be noticed by those on the Schley, especially as it does not appear that the two barges were in sight at the same time, and the Schley's course was changing. Almost immediately afterwards the Schley heard the fog signal from the tug nearly dead ahead, perhaps a very little on the port bow. The Schley was then swinging to port under a starboard helm. The Mayer was perceived, immediately after its fog signal was heard, bearing almost dead ahead. The helm of the Schley was put hard astarboard, two whistles were blown, and answered from the Mayer, the port engine was reversed full speed, and probably the starboard engine put full speed ahead. The Schley, therefore, went rapidly to port. The Mayer's engines were put full speed astern, and the helm put amidships. The Mayer began to go off to starboard under the reversed engines, and came almost to a standstill. The Mayer's stem came in contact with the Schley's starboard side about amidships. The Schley was heeled somewhat to port by the blow, though the blow was not heavy. As the Schley righted, the stem of the Mayer scraped lightly along the Schley's starboard side. The two vessels were rolled apart by the swell, and then came together again, the bluff of the Mayer's port bow striking the Schley's starboard quarter about 50 feet from the stern. At the time of this last contact, the heading of the two vessels did not vary more than two points or thereabouts. After the two steamers came in sight of each other, both did their best to avoid a collision, as both captains testified, each of the other, with a frankness highly commendable. The cause of the accident must be sought in the previous actions of the two vessels.

That the Schley was proceeding at too great a speed, considering the density of the fog and that a fog signal of some sort had been heard, is plain, and counsel hardly denied it. The rate of speed adopted by Capt. Butman was doubtless that which would be adopted by many prudent captains; but, as has been determined over and over again, his speed was greater than that permitted by the rules. The Schley's lookout also was apparently defective. No lookout was stationed at the bow. The captain and second officer were on the bridge, from which they had an unobstructed view, but, considering the density of the fog, and the likelihood of meeting vessels, some man should have been stationed near the vessel's stem, charged with the sole duty of lookout. He might not have seen so much as could be seen from the bridge, though in the peculiarly variable and uncertain atmosphere of a fog, even this is uncertain. Though he had seen no more, yet he might have heard more, and the lookout's duty comprehends hearing as well as seeing. It is not necessary to determine this point, however, as the Schley was almost admittedly to blame for excessive speed. That the Mayer also was to blame there can be no serious doubt. The fault is apparent on the face of the pleadings. A tug

and tow is not a method of navigation necessarily illegal, but it is a method of navigation so dangerous that the utmost care is required in its use. The H. M. Whitney, 30 C. C. A. 343, 86 Fed. 697, and cases cited. To circle about Boston light in a fog so dense that the nearest barge is often out of sight from the tug, to cross and recross the usual course of incoming and outgoing vessels, is not to exercise that care which is required from tows. One such turn may perhaps be excused in case of necessity, if extraordinary precautions are taken. Six such turns in one morning, with no precautions other than those required for the ordinary navigation of a tug and tow, are quite inadmissible. That Capt. McLeod of the Mayer was an intelligent and competent master his appearance on the stand tended to show. His error was the adoption of a wrong theory, forced upon him, perhaps, by the wishes of his owners, or by an unlawful custom prevailing among tow boat men. The diagram, which was made with care and substantial accuracy by Capt. Jones, of the leading barge,—the man who best saw the accident as a whole,—shows that the Mayer's maneuver closely resembled the drawing of a seine about a school of fish, which school is represented on the diagram by the Schley. Had a collision been sought, no more effective maneuver could have been devised.

It is not necessary for this court to say precisely what Capt. McLeod should have done that morning. He had his choice of several proceedings. He might have anchored his barges, if not in the traveled course between Thieves Ledge buoy and Boston light-ship, then in the comparatively unoccupied waters south of the light-ship. The condition of the sea, at any rate by 12 o'clock, afforded no obstacle. He might have turned about once on having made Boston light-ship, and have stood slowly to sea until the fog lifted, or until he had gone so far beyond the congested district around the light-ship as to make turning a matter of comparative safety. Counsel for the Mayer urged that, having once found his bearings, he could not be expected to lose them again, and that Thieves Ledge buoy and Boston light-ship afforded convenient limits for his course to and fro while waiting for the fog to clear up. That these objects were marks used constantly by vessels going in and out of Boston harbor shows that they could not properly be thus used by the Mayer as turning posts. It was urged that the Mayer gave all permissible signals. The tug and tow were to blame for making the turn under existing circumstances, with or without signals; but I think that signals other than those given would have been appropriate. Had it been necessary—as it was not—for the Mayer to turn about in the place selected, not ordinary, but extraordinary, precautions should have been taken. In turning about, however slowly, the tug and tow were an object of serious danger to a vessel approaching from almost any direction. The ordinary signals which determine under ordinary circumstances the position and course of the signaling vessel would be almost sure to mislead vessels approaching, as they misled the Schley in this case. It is true that the rules prescribe no signals to declare the Mayer's maneuver, not improbably because that maneuver in a fog is deemed so dangerous as to be almost inadmissible. If it becomes necessary, those who make

it should appreciate its extraordinary nature and danger, and should give the fullest possible warning that something extraordinary and dangerous is being done. Had Capt. McLeod constantly blown danger signals from the Mayer and from his barges at the same time, it is probable that approaching vessels would have been warned off the neighborhood, though they would not have known precisely the danger which menaced them. Some extraordinary precaution like this I believe to be required if a turn like that in question is ever to be made. To have done this would have been to proclaim that something so dangerous was being done in the place that other vessels had best keep away until the act was completed. To state this would have been, I think, to state the truth. The Mayer stretched a line 2,000 feet long across a large part of the entrance to Boston harbor, in a dense fog, without power of altering the position of the line, except by pulling it at one end.

For these reasons, there must be a decree for a division of damages.